**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **LAKEITH AMIR-SHARIF, #05081644,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **3:06-CV-0408-M** |
| | ) | **ECF** |
| **SHERIFF LUPE VALDEZ, et al.,** | ) | |
| **Defendants.** | ) | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b), and an order of the court in

implementation thereof, this case has been referred to the United States Magistrate Judge.  The

findings, conclusions and recommendation of the Magistrate Judge are as follows:

FINDINGS AND CONCLUSIONS:

Type of Case:  This is a civil rights complaint brought by a county inmate pursuant to 42

U.S.C. § 1983.[1]

Parties:  Plaintiff is presently incarcerated at the Dallas County Jail in Dallas, Texas.

---

[1]     Prior to submitting this action, Plaintiff filed two civil right actions challenging the conditions of confinement at the Dallas County Jail.  *See Amir-Sharif v. Valdez, et al.*, 3:06cv0081-B (N.D. Tex., Dallas Div.) (dismissed on September 1, 2006); *Amir-Sharif v. Dallas County, et al.*, 3:06cv0143-K (N.D. Tex., Dallas Div.) (dismissed in part and process issued in part on October 5, 2006).  In the first action, the Court ordered the Dallas County Sheriff Department to conduct an investigation into Plaintiff's allegations and prepare a *Martinez* Report in accordance with the procedure set out in *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978).  *See Martinez* Report filed on April 19, 2006, in 3:06cv0081-B, and referred to *infra* and partially enclosed as Attachment I.

Most recently, on October 13, 2006, Plaintiff filed yet another action challenging his recent transfer to punitive segregation.  *Amir-Sharif v. Howell, et al.*, 3:06cv1901-L(findings recommending dismissal without prejudice for failure to exhaust administrative remedies filed Oct. 27, 2006).

Defendants are Dallas County Sheriff Lupe Valdez, Officer Jay Abel, Officer Hayden (identified in original  as Officer Jane Doe), Captain Ledford, Sgt. Sanders (identified in original complaint as Sgt. Jane Doe), Dr. Steven Bowers, Dallas County, Chief Deputy Edgar L. McMillian, Jr., and the University of Texas Medical Branch (UTMB).  (Amended Complaint filed October 18, 2006).

The Court did not issue process in this case pending preliminary screening.  On March 10, June 26,  and October 26, 2006, the Magistrate Judge issued an original and two supplemental questionnaires to Plaintiff who filed his answers on April 19, September 5, and November 8, 2006, respectively.

<u>Statement of Case</u>:  On May 8, 2005, while Officer Hayden was serving dinner to the inmates in Plaintiff's cell block, she ran out of certain food items on the menu.  Plaintiff and other inmates requested to speak with a shift supervisor because Officer Hayden refused to contact food service and obtain the missing food items.  Officer Hayden refused to call a supervisor and advised the inmates that they needed to accept the food trays as they were or they would not eat.  According to Plaintiff, she then slammed shut one of the food slots in the cell block.  To prevent Officer Hayden from closing the second food slot and leaving without feeding the inmates, Plaintiff slid his left arm through the second food slot.  Officer Hayden immediately requested the assistance of Officer Jay Abell.  Upon arriving to the cell block, Officer Abell allegedly kicked Plaintiff's left arm and elbow repeatedly and without any warning.  When Plaintiff failed to remove his arm from the food slot, Abell began to stab Plaintiff's arm with big, metal jail keys, causing the arm to bleed profusely and ultimately swell up.  According to Plaintiff, Officer Hayden neither intervened to stop Officer Abell's use of force, nor summoned help.  (Amended Complaint at 3, 3-A, and 3-E through 3-G).

Plaintiff was then removed from the cell block, detained in a hold over cell, and then transported to the infirmary, where his wounds were cleaned, medicated and bandaged. Following his return to the holdover cell, Plaintiff states he was handed a fabricated disciplinary report which charged him with disrupting the feeding process. While, he concedes the disciplinary was ultimately dismissed, he complains that Defendants have prevented him from pursuing criminal charges against officers Abell.  (*Id.* at 3-H and through 3-K, 3-L and 3-M).

With respect to his left arm, Plaintiff alleges that his injury worsened, with constant swelling, pain, tingling and sharp pain shooting through the arm and fingers.  (*Id.* at 3-I and 3-N).  The left arm was ultimately x-rayed, and on May 25, 2005, Plaintiff was transferred to Big Spring State Hospital, where his arm was examined and treated by a doctor at that facility as well as by an outside specialist.   (*Id.* and Answer to Suppl. Question 25).

The amended complaint, as supplemented by the answers to the magistrate judge's questionnaires, alleges that Officer Abell used excessive force in repeatedly stabbing Plaintiff's left arm with the big jail keys, that Officer Hayden refused to stop Officer Abell, and that she fabricated the disciplinary report.  With respect to Sgt. Sanders, the amended complaint alleges that she tried to cover up the excessive force incident, and failed to investigate the fabricated disciplinary report.  The amended  complaint also names Sheriff Valdez and Capt. Ledford for failing to train adequately Officer Abell, for failing to investigate adequately the excessive force incident, and for failing to discipline Officer Abell.  Lastly, the amended complaint, as supplemented by the answers to the questionnaires, alleges that Dr. Bowers, Sheriff Valdez, and

Dallas County were deliberately indifferent to the serious medical condition of his left arm,

namely the constant swelling and pain.  Plaintiff seeks declaratory, injunctive and monetary

relief against all Defendants.  (Amended Complaint at 3-S and 3-T).

Findings and Conclusions:  The Court has permitted Plaintiff to proceed *in forma*

*pauperis*.  His complaint is, thus, subject to screening under 28 U.S.C. § 1915A, which imposes

a screening responsibility on the district court.  Section 1915A reads in pertinent part as follows:

> The court shall review . . . as soon as practicable after docketing, a complaint in a
> civil action in which *a prisoner* seeks redress from a governmental entity or
> officer or employee of a governmental entity [and] [o]n review, the court shall
> identify cognizable claims or dismiss the complaint, or any portion of the
> complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim
> upon which relief may be granted; or (2) seeks monetary relief from a defendant
> who is immune from such relief."

28 U.S.C. § 1915A(a) and (b) (emphasis added).  *See also* 28 U.S.C. § 1915(e)(2)(B) (applicable

to all *in forma pauperis* actions); 42 U.S.C. § 1997e(c)(1) (applicable to prison condition cases).

Sections 1915A(b), 1915(e)(2)(B), and 1997e(c)(1) provide for *sua sponte* dismissal if

the Court finds that the complaint is "frivolous" or that it "fails to state a claim upon which relief

may be granted."  A complaint is frivolous, if it "lacks an arguable basis either in law or in fact.*"*

*Neitzke v. Williams*, 490 U.S. 319, 325 (1989).[2]

Accepting as true Plaintiff's allegations as to the force used by Officer Abell, the Court

concludes that Plaintiff has arguably raised a claim for excessive use force in violation of his

constitutional rights.  Plaintiff's allegations that Officer Abell repeatedly kicked and stabbed his

---

[2]      While exhaustion of administrative remedies is mandatory, *see* 42 U.S.C. §
1997e(a), Plaintiff appears to have alleged sufficient inadequacies in the grievance procedure at
the Dallas County Jail that prevent resolution of this issue at the screening stage.  (*See* Amended
Complaint at p. 3 ¶ III, and pages 3-G, 3-L through 3-M, and 3-0; and Plaintiff's answers to the
magistrate judge's questionnaire filed on April 19, 2006).

left arm with jail keys, without provocation and while he was behind a metal door, raises a claim that the force was used maliciously and sadistically for the very purpose to cause harm and not merely to restore discipline. *See Hudson v. McMillian*, 503 U.S. 1, 7-8 (1992); *Rankin v. Klevenhagen*, 5 F.3d 103, 106-107 (5th Cir. 1993) (to state an excessive force claim under § 1983, a prisoner or pretrial detainee must show that force was not applied in a good faith effort to maintain or restore discipline but, rather, was administered maliciously and sadistically to cause harm).[3]  That Plaintiff previously pestered Officers Hayden and Abell, may not excuse Officer Abell's use of force.  Therefore, process should be issued on Plaintiff's excessive force claim.

Process should also be issued on Plaintiff's claims that Officer Hayden failed to stop Officer Abell during the excessive force incident referenced above, and that Dallas County, Sheriff Valdez, Capt. Ledford, and Chief McMillian condoned the use of force to maintain discipline within the Dallas County Jail, and failed to train and supervise adequately Officer Abell on the use of force.  Plaintiff's allegation that Officer Hayden merely watched Officer Abell instead of intervening or summoning help, arguably raises a constitutional violation.  Similarly, Plaintiff may have arguably raised a claim with respect to Dallas County, Sheriff Valdez, Capt. Ledford and Chief McMillian's alleged acquiescence in the use of excessive force to maintain order, and the alleged failure to train and supervise Officer Abell.

Plaintiff's remaining claims fail to raise a federal constitutional claim.  A plaintiff can successfully invoke § 1983 only when his federal statutory or constitutional rights have been violated.  Officer Hayden's refusal to contact food service when she ran out of certain food items

---

[3]     It is unclear from Plaintiff's pleadings, whether he was a pre-trial detainee at the time of the excessive force incident at issue in this case.

so that all inmates in Plaintiff's tank could have the same amount and quality of food does not

rise to the level of a federal constitutional violation.  Nor does Hayden's alleged fabrication of

the disciplinary report or Sgt. Sanders' alleged cover-up and subsequent refusal to investigate the

same, raise actionable claims.  The same applies to the alleged failure to investigate adequately

the excessive force incident.  "[A] prison official's failure to follow the prison's own policies,

procedures or regulations does not constitute a violation of due process." *Myers v. Klevenhagen,*

97 F.3d 91, 94 (5th Cir. 1996).  Alternatively, Plaintiff concedes the disciplinary report was

dropped, thus rendering all claims related to the fabricated disciplinary report moot.  Even if

these claims were not moot, Plaintiff concedes suffering only emotional distress (*See* Answer to

Suppl. Questions 23 and 24), which bars all of his claims for monetary relief under 42 U.S.C. §

1997e(e).  *Harper v. Showers*, 174 F.3d 716, 719 n. 5 (5th Cir. 1999) (42 U.S.C. § 1997e(e)

requires prisoners filing suit to demonstrate a physical injury to sustain a claim for damages).

Next Plaintiff claims that Defendants precluded a criminal investigation, and refused to

assist him in initiating criminal charges against Abell.  These claims do not rise to a

constitutional violation.  Plaintiff does not have the right to have criminal charges filed against a

third person.  *See Pierre v. Guidry*, 75 F. Appx. 300, 300 (5th Cir. 2003) (per curiam) (citing

*Cort v. Ash,* 422 U.S. 66, 79 (1975)); *Oliver v. Collins*, 904 F.2d 278, 280-81 (5th Cir. 1990).

Moreover, the investigation into possible criminal activities and the prosecution of state criminal

offenses fall within the exclusive jurisdiction of the executive branch of the state government.

Lastly, Plaintiff alleges denial of adequate medical care for his left arm following the

May 8, 2005 incident.  He seeks to sue Dr. Bowers and UTMB in connection with this claim.

Any claim against UTMB should be dismissed with prejudice as frivolous.  UTMB is an

agency of the State of Texas.  *See Sampson v. United States*, 73 Fed.Appx. 48, 49, 2003 WL

21919906, *1 (5th Cir. 2003) (unpublished per curiam); *O'Rourke v. United States*, 298

F.Supp.2d 531, 535-536 (E.D.Tex. 2004); *Broughton v. Bowles, et al.*, 3:04cv1310-L (N.D. Tex.,

Dallas Div., Dec. 30, 2004) (adopting findings, conclusions and recommendation of the

magistrate judge).  As such, it is immune to suit in federal court under the Eleventh Amendment

of the United States Constitution.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66

(1989); *Aguilar v. Texas Dept. of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998) (the

Eleventh Amendment bars suit against a state or a state entity regardless of whether money

damages or injunctive relief is sought); *see also Briggs v. Mississippi*, 331 F.3d 499 (5th Cir.

2003).

    Plaintiff's claim against Dr. Bowers lacks an arguable basis in law and should be

dismissed with prejudice as frivolous.  To state a colorable claim under the Eighth Amendment

for denial of medical care, convicted inmates must allege acts or omissions "sufficiently harmful

to evidence a deliberate indifference to serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97,

106 (1976); *Norton v. Dimazana*, 122 F.3d 286, 291 (5th Cir. 1997).  "Deliberate indifference

encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of

mankind."  *Norton*, 122 F.3d at 291.  It occurs when a prison official subjectively knows of and

disregards a substantial risk to the inmate's health or safety.  *Farmer v. Brennan*, 511 U.S. 825,

837-840 (1994).[4]

---

    [4]    As noted above, it is unclear whether Plaintiff was a pretrial detainee during the
events at issue in this case.  Nevertheless, the same standard applies to his claims of denial of
medical care under the Due Process Clause of the Fourteenth Amendment.  *Wagner v. Bay City,
Tex.,* 227 F.3d 316, 324 (5th Cir.2000); *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526
(5th Cir. 1999); *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 650 (5th Cir. 1996).  "[T]here is no
significant distinction between pretrial detainees and convicted inmates concerning basic human
needs such as medical care.  *Gibbs v. Grimmette,* 254 F.3d 545, 548 (5th Cir. 2001).

Plaintiff complains of treatment that he received for the injury to his left arm after the May 8 incident.  He alleges his left arm worsened in the days following the May 8 incident, warranting a referral to an out-side specialist, in light of the continued swelling, tingling, and sharp pain shooting through his arm and fingers.  (Amended Complaint at 3-N through 3-O).  Yet Dr. Bowers and his staff allegedly failed to take any action, apart from x-raying his left arm.  (*Id.*).

The *Martinez* Report reflects that on May 8, 2005, Plaintiff's arm was examined by a nurse after the incident in question.  (Attachment I, *Martinez* Report at Clinic Notes for May 8, 2005, at 5:00 p.m.).  "Superficial scratches, & light swelling" of elbow with decreased range of motion" was noted.  (*Id.*).  Plaintiff could only bend his elbow "50%."  (*Id.*).  Plaintiff was given an ice-pack, a sling, and Ibuprofen 800 mg for pain and swelling, and an x-ray was ordered.  (*Id.*).  On May 9, 2005, Plaintiff was seen again by a nurse for pain in his elbow.  (*Id.*, Clinic Notes for May 9, 2005, at 3:11 a.m.).  Edema was noted and Ibuprofen 800 mg. was given for pain.  (*Id.*).  On May 11, 2005, Dr. Kathryn Flangin examined Plaintiff.  (*Id.*, Clinic Notes for May 11, 2005, at16:05).  She noted Plaintiff was in "no obvious distress," his left arm was "difficult to access," but only "minimal edema if any [on] medial side [of] elbow,"  and "no pinpoint tenderness or redness."  (*Id.*).  While Plaintiff extended and flexed his left arm only to put on the sling and did not grip hand, he was able to move all fingers and "no localized tenderness"  was noted.  (*Id.*).  Plaintiff was prescribed Ibuprofen 600 mg. for the next ten days.  (*Id.*).  On May 19, 2005, an x-ray of Plaintiff's left arm was taken at the George Allen facility.  (*Id.*, Clinical Note for May 19, 2005).  Plaintiff, however, failed to permit correct anatomical positioning and the study was deemed inadequate.  (*Id.*).

8

Accepting as true the allegations as to the denial of medical care for his left arm, and resolving all disputed facts in his favor, Plaintiff cannot raise a cognizable claim under § 1983. This is not a case in which a plaintiff was denied medical attention altogether.  On the contrary, following the May 8, 2005 incident, Plaintiff was examined and received treatment for his left arm on three separate occasions, and was administered pain medication for twelve days following the incident.  The x-ray order was approved at the latest by May 11, and an x-ray was taken on May 19, 2005, within eleven days of the incident

Plaintiff alleges generally that the condition of his left arm worsened between the May 8 incident and his transfer to Big Spring State Hospital on May 25, 2005, justifying a referral to an out-side specialist.  (Amended Complaint at 3-R).  This unsubstantiated and self-serving assertion amounts at the most to a disagreement of opinion as to the treatment rendered.  It is well settled, however, that a disagreement opinion as to the correct medication and/or medical treatment does not constitute an actionable civil rights claim, but at most, a possible claim of medical malpractice appropriately addressed under state law.  *E.g. Estelle*, 429 U.S. at 107-108; *Norton*, 122 F.3d at 292; *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991); *Fielder v. Bosshard*, 590 F.2d 105, 107 (5th Cir. 1979).

Insofar as Plaintiff complains of the delay in x-raying his left arm, his claim fares no better.  Delay in providing medical care does not give rise to a constitutional violation unless the deliberate indifference of the medical staff results in substantial harm.  *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).  The facts of this case do not present a life threatening medical condition.  Plaintiff's own allegations in the complaint and answers to the questionnaires concede as much.  Moreover, Plaintiff's lingering side effects appear to have been minor.  In the

original complaint, Plaintiff conceded that he "continue[d] to suffer [only] *occasional* pains, discomfort and numbness in their [sic] arm as a result of defendant Abell's assault." (Original Complaint at 4-I; *see also* Amended Complaint at 3-P).

RECOMMENDATION:

For the foregoing reasons, it is recommended that all of Plaintiff's claims be DISMISSED with prejudice as frivolous pursuant to 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B)(i), and 42 U.S.C. § 1997e(c)(1), EXCEPT for the following claims on which process should issue:

(1) excessive use of force claim against Defendant Jay Abell, (2) failure to intervene and stop the excessive use of force claims against Defendant Hayden, and (3) acquiescence in the use of force to maintain order at the Dallas County Jail, and failure to train and supervise Officer Abell against Defendants Dallas County, Sheriff Valdez, Capt. Ledford and Chief McMillian.

It is further recommended that the District Court should ISSUE PROCESS as to Defendants Officer Jay Abell, Officer Hayden, Dallas County, Sheriff Valdez, Capt. Ledford and Chief McMillian on the above claims, *see* Federal Rule of Civil Procedure 4, and should DISMISS with prejudice Defendants Sgt. Sanders, Dr. Steven Bowers, and UTMB, *see* 28 U.S.C. §§ 1915A(b) and 1915(e)(2). The District Court should also DISMISS Officer Jane Doe and Sgt. Jane Doe whom Plaintiff has now identified as Officer Hayden and Sgt. Sanders.

It is also recommended that, in the event this recommendation is accepted and process is issued, the District Court should RE-REFER this case to the Magistrate Judge for pre-trial management and to consider Plaintiff's motion to stay (Docket #43) pending ruling by the Fifth Circuit Court of Appeals in No. 3:06cv0143-K (Appeal No. 06-10563).

A copy of this recommendation will be mailed to Plaintiff.

Signed this 9th day of November, 2006.

_____
WM. F. SANDERSON, JR.
UNITED STATES MAGISTRATE JUDGE

## NOTICE

In the event that you wish to object to this recommendation, you are hereby notified that you must file your written objections within ten days after being served with a copy of this recommendation.  Pursuant to *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*), a party's failure to file written objections to these proposed findings of fact and conclusions of law within such ten-day period may bar a *de novo* determination by the district judge of any finding of fact or conclusion of law and shall bar such party, except upon grounds of plain error, from attacking on appeal the unobjected to proposed findings of fact and conclusions of law accepted by the district court.

**ATTACHMENT    I**

(BF)
COPY

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

APR 1 9 2006

CLERK, U.S. DISTRICT COURT
By ___NB___
        Deputy

LAKEITH AMIR-SHARIF, #05081644,      )
                                     )
v.                                   )      3:06-CV-0081-B    (BF)
                                     )      ECF
DALLAS COUNTY, et al.                )

## MARTINEZ INVESTIGATION

TO THE HONORABLE COURT:

The following is an investigation conducted by the Dallas County Sheriff Department concerning the incarceration of Plaintiff.  The order of documents is:

ORIGINAL COURT ORDER
Sheriff Dept. Response
Jail Records
Medical Records
Dr. Walter Skinner Report

Respectfully Submitted

*Leslie Sweet*

Leslie Sweet
Dallas Sheriff Legal Advisor
214-653-2906

Attachments I

## AKEITH AMIR – SHARIF
## BNO# 05011624

**A.**   **General:**

Upon review of the information available, I am unable to track correctly Mr. Amir-Sharif's multiple admissions and discharges from various branches of the Dallas County Jail.  He apparently was hospitalized at the Big Springs State Hospital during the summer of 2005.

**B.**   **Diagnoses upon incarceration and discharge (s) were:**

1.  Schizoaffective disorder
2.  Seizures
3.  Asthma

**C.**   **Medical Provider Reports**

3-16-05:  Inmate complained of a fractured nose.  Prior to incarceration, he was seen at RHD medical center for a possible fractured nose.  Medical records:  documented above; a diagnosis of asthma, treated with albuterol and beclovent inhalers.  Treatment:  albuterol and ibuprofen.  Facial x-ray ordered.

3-18-05 – James Holbrook, M.D., ordered tegretol, tegretol and dilantin levels ordered also.

3-24-05 – Inmate reported having a seizure – not observed.  Stated prior to incarceration was on tegretol plus, another anti-seizure medication – name unknown.  James Holbrook, M.D. contacted.  Tegretol dosage increased from 200 mgs bid to 400 mgs bid; dilantin 300 mg h.s. ordered.

3-24-05 – After above incident, @ 1 hour later, inmate had confrontation in his tank; had what was felt by a provider to be a pseudo-seizure.

3-24-05 – Inmate to be screened for mental health evaluation by Patricia Goodwin; unable to be accomplished.

3-28-05 – Inmate Complained of headache and dizziness.  No treatment instituted.  Improved.  Able to eat and to go to court.

3-28-05 -  Mental health evaluation still unable to be accomplished.

5-8-05 – Altercation with officers:  left elbow hit with keys by officer.  Inmate complained of painful left elbow.  Examination:  slight swelling of elbow with decreased range of motion; x-ray ordered.  Treated with ice and a sling.

**Page 2 – Akeith Amir-Sharif**

5-11-05 – Continued to complain of left elbow pain.  Seen by Kathryn Flangin, M.D., - absence of point tenderness or redness.  Able to move all fingers; pulse good and equal.

5-12-05 – Multiple complaints:
    a) left elbow – wants x-ray
    b) request to see physician (seen 5-11-05)
    c)  request HIV test
    d) wanted skin test for tuberculosis; previously performed 05- 05 – reported to be negative

8-23-05 – In Kays unit – reported to be on medications.  Sprayed with pepper spray by officer. Eyes flushed with normal saline.

9-2-05 – Notation from Kathy Finch, questioning as to whether inmate received anti-psychotic medications.  Inmate released 9-2-05.

10-18-05 – Re-admitted to jail.  According to inmate he "does not have psych problems; does not take medications."

11-16-05 – Inmate reported taking medications.

12-16-05 – Seen by C. Kempke, M.D.  Inmate not taking medications; does not feel that he needs to.

1-4-06 – Dr. Kempke reports inmate continues to refuse to take medications.

3-2-06 – Reported to be medication complaint.

3-21-06 - ?competency hearing;? Court status

**D.**    **Radiology**

1)  4-15-05 – 4 views of facial bones:  possible hairline fracture; otherwise normal.

2)  5-20-05 – Left elbow:  films underexposed technically.  Deformity of the articular surface of the ulnar - recent or remote trauma.

Films read by Veena Daulot, M.C.

5-20-05 – Radiology technician, Bob Lawrence reported that inmates would not permit correct anatomical positioning for the x-ray of his elbow.

**Page 3 – Akeith AmirSharif**

**E. Summary**

Inmate with:

1) Schizo – affective disorder –
   Intermittently complaint with taking medications ordered for such.
2) Seizure disorder – treated with tegretol and dilantin
3) Asthma – on albuterol
4) Trauma left elbow, resolved
5) Possible hairline fracture nose – occurred prior to incarceration and
   without reportable residua
6) Allergy to penicillin


Walter N. Skinner, M.D.
Interim Medical Director

**Offender Name:** AMIRSHARIF, LAKEITH    BIN#: 05011624 **DATE/TIME:** 05/08/2005 17:00
**DOB:** 11/15/1964 **RACE:** B
**Facility:** George Allen Jail **LAI:**    **CELL:** 11n5

**Most recent vitals from** 05/08/2005: BP: 156 / 106 (Sitting)  Wt.  Height  Pulse: 113 (Sitting)  Resp.: 19 / min Temp: 97.4 (Oral)

**CURRENT MEDICATIONS:**
ALBUTEROL 90MCG PUFFS,  2 PUFFS INHALATION QID
    *Special Instructions:* EQUI=PROVENTIL, VENTOLIN.
CARBAMAZEPINE 200MG TABS,  2 TABS ORAL(po) BID
    *Special Instructions:* EQUI=TEGRETOL
PHENYTOIN SODIUM 100MG CAPS,  3 CAPS ORAL(po) QHS
    *Special Instructions:* EQUI=DILANTIN


**ALLERGIES:** PENICILLINS

L__ ate to NS after altercation with officers..L elbow has superficial scratches & slight swelling...states officer hit his elbow with a set of keys. Limited ROM, can bend elbow but only about 50%. Arm sling & ice pack applied and set up for xray. Ibu 800mg given now x 1 for pain and swelling. Please review.

Procedures Ordered:
    **CHART REVIEW REQUEST:**    other
    **ELBOW XRAY:**    other


Electronically Signed by BEAMON, ZIPPOHRAL L LVN on 05/08/2005.
##And No Others##

**Offender Name:** AMIRSHARIF, LAKEITH          **BIN#:** 05011624 **DATE/TIME:** 05/09/2005 03:11
**DOB:** 11/15/1964   **RACE:** B
**Facility:** George Allen Jail **LAI:**    **CELL:** 11n5

**Most recent vitals from** 05/08/2005: BP: 156 / 106 (Sitting)  Wt.  Height  Pulse: 113 (Sitting)  Resp.: 19 / min Temp: 97.4 (Oral)

**CURRENT MEDICATIONS:**
ALBUTEROL 90MCG PUFFS,   2 PUFFS INHALATION QID
     *Special Instructions:* EQUI=PROVENTIL, VENTOLIN.
CARBAMAZEPINE 200MG TABS,   2 TABS ORAL(po) BID
     *Special Instructions:* EQUI-TEGRETOL
PHENYTOIN SODIUM 100MG CAPS,   3 CAPS ORAL(po) QHS
     *Special Instructions:* EQUI=DILANTIN


**ALLERGIES:** PENICILLINS

l   C/O LEFT ELBOW PAIN.  EDEMA NOTED.  SEE EARLIER NOTE.  IBUPROFEN 800MG GIVEN PO X1 NOW FOR PAIN.


     Electronically Signed by ROSE, WESLEY  LVN on 05/09/2005.
     ##And No Others##

Patient Name: AMIRSHARIF, LAKEITH
MRN: 05011624
Social Security #: 463493513

MEDICAL CHART REVIEW Entered 05/09/2005 17:02 by FLANGIN, KATHRYN M MD

NEEDS  TO   GET  XRAY  AND   SEE  PROVIDER  FOR  POSSIBLE   FX  ELBOW

BIN#: 05011624 DATE/TIME: 05/11/2005 16:05

Offender Name: AMIRSHARIF, LAKEITH
DOB: 11/15/1964   RACE: B
Facility: George Allen Jail LAI:   CELL: 11n5
Vital Signs: 05/08/2005 156 / 106 (Sitting)   113 (Sitting)   19 / min   97.4 (Oral)   19 / min
Current Medications:
ALBUTEROL 90MCG PUFFS, 2 PUFFS INHALATION QID
    Special Instructions: EQUI=PROVENTIL, VENTOLIN.
CARBAMAZEPINE 200MG TABS, 2 TABS ORAL(po) BID
    Special Instructions: EQUI-TEGRETOL
PHENYTOIN SODIUM 100MG CAPS, 3 CAPS ORAL(po) QHS
    Special Instructions: EQUI=DILANTIN
\
Allergies: PENICILLINS

**SUBJECTIVE:**

COMPLAINS OF LEFT ARM HURT SINCE AN ALTERCATION. WEARING
A SLING ON LEFT ARM.

**OBJECTIVE:**
GEN-IN NO OBVIOUS DISTRESS
L. T ARM-DIFFICULT TO ACCESS, ONLY MINIMAL EDEMA IF ANY MEDIAL
SIDE ELBOW, NO PINPOINT TENDERNESS OR REDNESS, WILL EXTEND
ONLY AND FLEX ONLY TO PUT IN SLING, WILL NOT GRIP HAND,
MOVES ALL FINGERS, NO LOCALIZED TENDERNESS OF LEFT HAND,
PULSES FULL

ALREADY SET UP FOR LEFT ELBOX XRAY

Procedures Ordered:
    HAND XRAY:        traumatic injury

Started Meds:
    IBUPROFEN 600MG TABS        364076605        05/11/2005 16:32
        1 TABS ORAL(po) B BID
        Special Instructions:Equi=Motrin.
    STOP DATE: 05/21/2005 16:32                REFILLS: 2

Electronically Signed by FLANGIN, KATHRYN M MD on 05/11/2005.
##And No Others##

**Offender Name:** AMIRSHARIF, LAKEITH          **BIN#:** 05011624 **DATE/TIME:** 05/12/2005 20:22
**DOB:** 11/15/1964   **RACE:** B
**Facility:** George Allen Jail   **LAI:**      **CELL:** 11n5

**Most recent vitals from** 05/08/2005: BP: 156 / 106 (Sitting)  Wt.  Height  Pulse: 113 (Sitting)  Resp.: 19 / min Temp: 97.4 (Oral)

**CURRENT MEDICATIONS:**
ALBUTEROL 90MCG PUFFS,  2 PUFFS INHALATION QID
    *Special Instructions:* EQUI=PROVENTIL, VENTOLIN.
CARBAMAZEPINE 200MG TABS,  2 TABS ORAL(po) BID
    *Special Instructions:* EQUI-TEGRETOL
IBUPROFEN 600MG TABS,  1 TABS ORAL(po) B BID
    *Special Instructions:* EQUI=MOTRIN.
PHENYTOIN SODIUM 100MG CAPS,  3 CAPS ORAL(po) QHS
    *Special Instructions:* EQUI=DILANTIN

ALLERGIES:  PENICILLINS
Late entry- seen 05-11-05
Subject seen for kites to be addressed. Has multiple c/o.  C/o needing x-ray of left elbow.  X-ray is scheduled.
Requests to see Dr.  On list and was seen on 05-11-05.
Wants to be set up for HIV test.  test set up.
Wants TB tests.  Chart reflects that he was tested in March 2005 and test negative.
Wants pain med.  Advised to discuss with Dr. when he is seen.

Electronically Signed by PHELPS-SANDERS, NANCY E LVN on 05/12/2005.
##And No Others##

Patient Name: AMIRSHARIF, LAKEITH
MRN: 05011624
Social Security #: 463493513

X-RAY ORDERED Entered 05/19/2005 13:02 by LAWRENCE, BOB

Patient would not allow correct anatomical positioning.  Inadaequate study.

Date: 05/19/2005 12:57
From: BOB LAWRENCE
To: RAMONA LEACH K(E);
Cc: BOB LAWRENCE(E);
Subject: AMARSHARIFF #05044624
Re: LAKEITH AMIRSHARIF

Patient would not allow/permit adequate/correct anatomical positioning.  Suboptimal study.